**FOR PUBLICATION**


**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**


In re:                                        Case No. 16-10015-A-9

SOUTHERN INYO HEALTHCARE DISTRICT,


             Debtor.

_____

SOUTHERN INYO HEALTHCARE DISTRICT,           Adv. No. 17-01077-A

             Plaintiff,                       FL-6, FWP-8

      v.
                                              **MEMORANDUM**
OPTUM BANK, INC.,

             Defendant.



Argued and submitted on May 22, 2019

at Fresno, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding


Appearances:    Jeffrey I. Golden, Weiland Golden Goodrich
                LLP for Southern Inyo Healthcare District;
                Ashley M. McDow, Foley & Lardner LLP for
                Southern Inyo Healthcare District; Latonia
                C. Williams, Shipman & Goodwin LLP for
                Optum Bank, Inc.; Gerald N. Sims, Pyle
                Sims Duncan & Stevenson, P.C. for Optum
                Bank, Inc.

Hospital districts may issue promissory notes for "equipment or items which have a useful life equal to, or longer than, the term of the notes, as determined by the board of directors."  Cal. Health & Safety Code § 32130.2.  Longer loans are unenforceable.  Apparently without considering the length of the loan vis-à-vis asset life, a hospital district financed, and then refinanced, the purchase of equipment and software.  Is the refinance loan enforceable?

**I.    FACTS**

    **A.    About the Debtor**

Southern Inyo Healthcare District ("Southern Inyo" or "the district") is a rural healthcare district founded under the California Local Health Care District Law.  Cal. Health & Safety Code § 32000 et seq.  It operates a hospital, skilled nursing facility and medical clinic in Inyo County, California.  Its principal office is in Lone Pine, California.  Southern Inyo is governed by its Board of Directors.

    **B.    The El Dorado Line of Credit**

From time to time in the past, Southern Inyo experienced cash flow difficulties.  In 2007, as a means to address short-term cashflow shortfalls, Southern Inyo took out a $250,000 equity line of credit from El Dorado Bank ("El Dorado loan").  It bore interest at 8.25% and was secured by a deed of trust against Southern Inyo's Lone Pine office property.  The line of credit matured in 2012, and having been unpaid, converted to a 15-year promissory note with monthly principal and interest payments.

    **C.    The UHC of California Equipment and Software Purchase Loan**

In 2011, Southern Inyo wanted to purchase Health Information Technology/Electronic Health Records equipment and software for use in

2

1  its facilities.  Unable to pay cash for these items, the district

2  arranged financing with UHC of California.  At a special meeting held

3  in 2011, Southern Inyo's Board of Directors authorized the issuance of

4  promissory notes to UHC of California for purchase of the equipment

5  and software.  The Board of Directors memorialized its decision in

6  Resolution 11-06.  Resolution 11-06 contained no findings as to the

7  useful life of the equipment and/or software for which the promissory

8  notes were issued.  It also did not reflect whether the Board

9  considered useful life spans of these items vis-à-vis the length of

10  the UHC of California loan.

11        Thereafter, the District purchased the equipment and software,

12  and executed a promissory note for $1.7 million in favor of UHC of

13  California ("UHC loan").  The loan was secured by an Indenture of

14  Trust.  It bore interest at 3.75% per annum and matured in late 2016.

15  The note required annual principal reductions in excess of $500,000,

16  which were to be paid starting December 2014.  It also required

17  semiannual interest payments.  The loan offered Southern Inyo a

18  sliding scale prepayment incentive, e.g., 10% reduction in principal

19  if the note was paid in full within 36 months of inception, and 7.5%

20  reduction in principal if paid in full in 42 months.

21        **D.    Southern Inyo's Revenues Decline**

22        Starting in 2012, after it executed the loan in favor of UHC of

23  California, Southern Inyo's revenues fell.

24        Rather than cutting expenses, in 2013 and 2014 Southern Inyo

25  increased staffing.  Predictably, those changes resulted in increased

26  operating expenses and further pinched Southern Inyo's already tight

27  cash flow.  By June 2013, the District had only four days' operating

28  cash; by June 2014 it had less than two days' operating capital; and

1   by late 2014, its financial situation was "day to day" and

2   "precarious."[1]  As a result, the district was unable to make the first

3   principal reduction in December 2014 on the UHC loan or to take

4   advantage of the prepayment incentives offered as a part of that loan.

5          **E.    The Optum Bank Loan**

6          Driven by constricted cashflow, the district explored

7   refinancing its short-term debt into longer-term obligations with

8   lower monthly payments.  Among the interested lenders was Optum Bank.

9   Optum Bank submitted a Confidential Letter of Interest for a loan to

10  refinance the El Dorado line of credit and the UHC loan.  The bank

11  proposed a loan ("Optum Bank loan") of approximately $1.5 million with

12  a 10-year maturity.  The interest rate was fixed for the first 5 years

13  of the loan at 5.25% per annum and thereafter adjusted the interest

14  rate to the Federal Home Loan Bank of Seattle's 5-year rate plus

15  3.59%.  But to accommodate the district's cash flow needs the bank

16  suggested two key provisions: (1) though due and payable in 10 years,

17  the proposed loan was amortized over 20 years, which provided the

18  district with a lower debt service payment; and (2) the repayment was

19  timed to Southern Inyo's annual cash flow cycle; between January and

20  June of each year, Southern Inyo was to make monthly payments of

21  principal and interest, estimated to be $20,200.  Between July and

22  December of each year, Southern Inyo benefitted from a debt service

23  hiatus.  The loan was to be secured by a first deed of trust against

24  the district's Lone Pine, California, real property and against other

25  tangible and intangible personal property.

26         Optum Bank's loan proposal was presented at a special meeting in

27  October 2014.  The agenda described Optum Bank's proposal as

28  ───────────────
[1] Cotter Dep. 336:24-337:5, December 6, 2018, ECF No. 179.

1    "refinancing long term debt."  Present at the meeting were the members

2    of the Southern Inyo Healthcare District's Board of Directors (Dick

3    Gering ("Gering"), president; Drew Wickman; and Jack Berry), the

4    District's Chief Executive and Financial Officer, Lee Barron

5    ("Barron"), and Recording Secretary, Mary Gonzales.  Barron summarized

6    the terms of Optum Bank's proposal.  The Board found that "In the long

7    run [the loan] benefits the District as it allows for more reasonable

8    payment options," and approved Optum Bank's "mortgage loan."[2]  Even

9    though 85% of the Optum Bank loan would be used to refinance the UHC

10   loan, the minutes of the October 2014 meeting do not reflect

11   discussion of the useful life of the equipment and software.

12       Thereafter, on behalf of the District, Barron accepted Optum

13   Bank's proposal by signing the Confidential Letter of Interest.  The

14   District then submitted to Optum Bank a Business Credit Application,

15   which was signed by CEO/CFO Barron, President Gering and Secretary

16   Mary Kemp.

17       The Optum Bank loan closed late February 2015.  As a part of

18   finalizing the loan, President Gering and Secretary Kemp signed three

19   species of documents: (1) confirmation of authorization to incur debt,

20   called a "Governmental Certificate;" (2) promissory note; and (3)

21   security interest agreements to create and perfect security interests

22   in favor of Optum Bank.  The Governmental Certificate purported to

23   authorize a 10-year $1.767 million loan, secured by Southern Inyo's

24   real and personal property.  The certificate recited that on the date

25   of signing the Board of Directors approved a $1.676 million dollar

26   loan, secured by the District's real and personal property, with a

27   maturity in February 2025.  The promissory note memorialized the loan

28   [2] Minutes Special Meeting, October 13, 2014, ECF # 195.

from Optum Bank in the amount of $1.676 million.  The note provided
for an initial fixed interest rate of 5.25% for the first five years,
but provided that the interest rate thereafter would increase to the
Federal Home Loan Bank of Seattle's 5-year loan rate plus 3.680%
(rather than 3.59% as stated in the Confidential Letter of Interest).
The note also provided for year-round monthly payments to Optum Bank,
rather than the six months on and six months off payment schedule
proposed in the Confidential Letter of Interest.  The note contained a
severability clause.  The security interest agreements and deeds of
trust encumbered the district's Lone Pine office building and all, or
nearly all, of its personal property.

At closing, Optum Bank paid off the El Dorado line of credit
($226,700) and UHC of California equipment and software loan
($1,423,300).  The remainder of the loan amount was absorbed by
transactional costs or was remitted to the district.

**II.  PROCEDURE**

**A.  Southern Inyo Files for Chapter 9 Protection**

In early 2016, Southern Inyo filed for Chapter 9 protection and
this court ordered relief.

Optum Bank filed a Proof of Claim for $1.17 million.  Optum Bank
contended its loan was secured by a deed of trust against Southern
Inyo's real property, i.e., 501 E. Locust Street, Lone Pine,
California, and by equipment, inventory, rents, monies, payments,
health-care insurance receivables, chattel paper, general intangibles,
fixtures, documents, records, instructions and accessions,
accessories, replacements, proceeds and other rights.

Southern Inyo has proposed, but not yet confirmed, a plan of
reorganization.

**B.    Southern Inyo Files an Adversary Proceeding**

The district filed this adversary proceeding in 2017.  It prays for disallowance of Optum Bank's Proof of Claim and for declaratory relief as to the invalidity of the bank's deed of trust against its real property and the bank's security interest against its personal property.  Southern Inyo contends that the Optum Bank loan was made contrary to applicable state law, Cal. Health & Safety Code §§ 32130, 32130.2, that the loan is unenforceable, and that any security interest supporting the unlawful loan is invalid.

Optum Bank answered and filed a counterclaim for restitution.

The parties have filed cross-motions for summary judgment. Southern Inyo advances two primary arguments in favor of its position: (1) Southern Inyo was mistaken to authorize a loan that is unenforceable under California Health & Safety Code § 32130.2; and (2) applicable law precludes a public entity from encumbering public assets in favor of a private lender.  Optum Bank advances precisely the opposite position on each issue.  In the alternative, Optum Bank argues that even if the loan was not authorized, the bank holds a claim for restitution.

**III. JURISDICTION**

This court has jurisdiction.  28 U.S.C. § 1334(a)-(b); *see also* General Order No. 182 of the Eastern District of California.  This is a core proceeding.  28 U.S.C. § 157(b)(2)(B),(K),(O).  The parties have consented to final orders and judgments by this court.  Amended Scheduling Order § 2.0, April 5, 2018, ECF # 72.

**IV.   LAW**

**A.    Summary Judgment**

Federal Rule of Civil Procedure 56 requires the court to grant

summary judgment on a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *incorporated by* Fed. R. Bankr. P. 7056. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *Swoger v. Rare Coin Wholesalers*, 803 F.3d 1045, 1047 (9th Cir. 2015) (citing *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)).

A shifting burden of proof applies to motions for summary judgment. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Id.*

"Where the non-moving party [e.g., a plaintiff] bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* (citation omitted). The Ninth

Circuit has explained that the non-moving party's "burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *Id.*  "In fact, the non-moving party must come forth with evidence from which [the factfinder] could reasonably render a verdict in the non-moving party's favor."  *Id.*

When the moving party has the burden of persuasion at trial (e.g., a plaintiff on claim for relief or a defendant as to an affirmative defense), the moving party's burden at summary judgment is to "establish beyond controversy every essential element of its . . . claim. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted).  In such a case, there is no need to disprove the opponent's case "[i]f the evidence offered in support of the motion establishes every essential element of the moving party's claim or [affirmative] defense."  Hon. Virginia A. Phillips & Hon. Karen L. Stevenson, *Federal Civil Procedure Before Trials, Calif. & 9th Cir. Edit.,* Summary Judgement, Burden of Proof ¶ 14:126.1 (Rutter Group 2019).

A party may support or oppose a motion for summary judgment with affidavits or declarations that are "made on personal knowledge" and that "set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(4).  The assertion "that a fact cannot be or is genuinely disputed" may be also supported by citing to other materials in the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data."  *Angel v.*

1   *Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) (citing

2   *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978)).

3   "Furthermore, a party cannot manufacture a genuine issue of material

4   fact merely by making assertions in its legal memoranda." *S.A.*

5   *Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d

6   1235, 1238 (9th Cir. 1982).

7         Summary judgment may only be granted if there is no genuine

8   dispute as to a material fact and the party is entitled to judgment as

9   a matter of law.  Fed. R. Civ. P. 56(a), (e) (lack of opposition is

10  insufficient basis to grant), *incorporated by* Fed. R. Bankr. P. 7056;

11  *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249

12  F.3d 1132, 1136 (9th Cir. 2001) (cross-motions for summary judgment do

13  not require that one motion must be granted).

14        **B.    Claims Filed**

15        A proof of claim is "deemed allowed, unless a party in interest

16  . . . objects."  11 U.S.C. § 502(a).  Federal Rule of Bankruptcy

17  Procedure 3001(f) creates an evidentiary presumption of validity for

18  "[a] proof of claim executed and filed in accordance with [the]

19  rules."  Fed. R. Bankr. P. 3001(f); *see also Litton Loan Servicing, LP*

20  *v. Garvida (In re Garvida)*, 347 B.R. 697, 706–07 (B.A.P. 9th Cir.

21  2006).  This presumption is rebuttable.  *Id.*  "The proof of claim is

22  more than some evidence; it is, unless rebutted, prima facie evidence.

23  One rebuts evidence with counter-evidence."  *Id.* at 707 (citation

24  omitted) (internal quotation marks omitted).  After the presumption is

25  rebutted, the creditor bears the burden of proof as to the validity

26  and amount of its claim.  *In re Southern California Plastics, Inc.*,

27  165 F.3d 1243 1248 (9th Cir. 1999); *In re Palmdale Hills Property,*

28  *LLC*, 423 B.R. 655, 665 (9th Cir. BAP 2009), *aff'd* 654 F.3d 868 (9th

Cir. 2011).

Bankruptcy Code § 502(b) enumerates grounds for objecting to a Proof of Claim. Among those is the unenforceability of the debt on which the claim is based under applicable nonbankruptcy law. 11 U.S.C. § 502(b)(1); *In re Salamon*, 528 B.R. 171, 178 (9th Cir. BAP 2015) (borrower's liability for deficiency after foreclosure in violation of California anti-deficiency law). Moreover, disallowing the claim underlying the lien voids liens securing that debt. 11 U.S.C. § 506(d); *Desnup v. Timm*, 502 U.S. 410, 415-16 (1992); *In re Blendheim*, 803 F.3d 477, 489 (9th Cir. 2015).

**C.    State Law on Hospital Districts Taking Loans**

California law authorizes the formation of rural hospital districts under "The Local Healthcare District Law." Cal. Health & Safety Code § 32000 et seq. Hospital Districts so organized act through a Board of Directors. *Id.* at §§ 32100-32111. Those statutes enumerate the authority of the Board of Directors to act on behalf of the district. *Id.* at §§ 32121-32140. Among those powers is the authority to establish and operate health care facilities, as well as to purchase and encumber district property. *Id.* at § 32121(c),(j), 32122.

A hospital district's authority to borrow is expressly enumerated. Cal. Health & Safety Code §§ 32130-32130.6. As pertinent here, Southern Inyo's decision to borrow from Optum Bank is governed by two provisions. Cal. Health & Safety Code § 32130 and § 32130.2.

Section 32130 provides:

A district may borrow money and incur indebtedness in an amount not to exceed 85 percent of all estimated income and revenue for the current fiscal year, including, but not limited to, tax revenues, operating income, and any other miscellaneous income received by the district, from

11

whatever source derived. **The money borrowed and indebtedness incurred under this section shall be repaid within the same fiscal year.**

Cal. Health & Safety Code § 32130 (emphasis added).

Section 32130.2 provides:

(a) A district may, **by resolution adopted by a majority of the district board,** issue **negotiable promissory notes** to acquire funds **for any district purposes subject to the restrictions and requirements imposed by this section.** The **maturity** of the promissory notes shall **not be later than 10 years from the date thereof. The total aggregate amount of the notes outstanding** at any one time shall **not exceed 85 percent of all estimated income and revenue** for the current fiscal year, including, but not limited to, tax revenues, operating income, and any other miscellaneous income of the district. Indebtedness incurred pursuant to any other provision of law shall be disregarded in computing the aggregate amount of notes that may be issued pursuant to this section.

**(b) Negotiable promissory notes may be issued pursuant to this section for any capital outlay facility, equipment, or item which has a useful life equal to, or longer than, the term of the notes, as determined by the board of directors.**

(c) The **maximum annual interest rate which may be paid** on the negotiable note shall **at no time exceed the amount authorized under Section 53531 of the Government Code.**

Cal. Health & Safety Code § 32130.2 (emphasis added).

Cal. Government Code § 53531 provides:

Any provision of law specifying the maximum interest rate on bonds to the contrary notwithstanding, bonds **may bear interest at a coupon rate** or rates **as determined by the legislative body** in its discretion but **not to exceed 12 percent per year** payable as permitted by law, unless some higher rate is permitted by law.

Cal. Government Code § 53531 (emphasis added).

No known case has construed or applied § 32130.2. But as this court reads that statute, subdivision (a) applies to the issuance of negotiable promissory notes "for any district purposes," including those described in subdivision (b). Subdivision (b) applies only to a district's use of promissory notes to acquire assets that have a

finite useful life, e.g., that wear out, break or become obsolete.
When applicable, subdivision (b) modifies downward the 10-year
maturity rule otherwise applicable to a promissory note by limiting
its maturity to the "useful life" of the asset, "as determined by the
board of directors." *Id.*

This reading is consistent with the purpose of § 32130.2, which
is to require hospital districts to avoid accumulating debt. As the
court in *Southern Humboldt Community Healthcare Dist.*, observed:

> Restrictions on the borrowing of public entities are common
> in California and other states. . . They may include a
> limitation on debt as a percentage of revenue, a
> restriction on the fiscal year from which loans may be
> repaid, or both. **They are intended to prohibit the
> accumulation of public debt without the consent of the
> taxpayers, and require governmental agencies to carry on
> their operations on a cash basis.**

*Southern Humboldt Community Healthcare Dist.*, 254 B.R. 758, 760
(Bankr. N.D. Cal. 2000) (emphasis added).

Moreover, when a hospital district's Board of Directors
exercises it statutory authority under § 32130.2 or any other
applicable provision of law, it must memorialize compliance with that
provision.

> **The municipal record, to be complete, should show all of
> the essential or material facts respecting the corporate
> vote, act or transaction** and that all of the mandatory
> charter provisions **have been followed substantially.** For
> example, where bills are required to be read a certain
> number of times before passage, the record should show that
> this has been done. However, the view has been expressed
> that a council need not, as a prerequisite to taking
> action, compile an evidentiary record through formal
> proceedings. It is free to base its actions on information
> and arguments that come to it from any source. **An
> incomplete record or the absence of a record may render
> ineffectual the action taken or purported to have been
> taken.**

5 McQuillin, *Municipal Corporations*, Municipal Records, Sufficiency §

14.3 Showing Required (3d ed.) (emphasis added).

**D.    Ultra Vires Acts**

"The powers of a municipality are to be exercised through its legally constituted agents, its officers, boards, or departments, and the authority of each officer, board, or department to exercise any of the corporate power with which the municipality has been clothed must be distinctly conferred upon that officer, board, or department, or its act will create no obligation against the municipality." *Von Schmidt v. Widber*, 105 Cal. 151, 159 (1894). Governmental boards of directors and officials only possess those powers "which are (1) expressly granted by the state constitution or by state statute or (2) necessarily implied by such express grants." *In re County of Orange*, 31 F.Supp.2d 768, 774 (C.D. Cal. 1998). "Any fair, reasonable doubt concerning the existence of the power" should be resolved against the municipality. *Schmidt v. Widber*, 105 Cal. at 157.

California restricts the amount of debt a public entity may incur and the manner in which the public entity may incur the debt. *In re Southern Humboldt Community Healthcare Dist.*, 254 B.R. at 760, citing *City of Los Angeles v. Offner*, 19 Cal.2d 483, 486 (1942).

"The validity of a [public entity's] transaction, whether it creates indebtedness or liabilities, is measured at the time the transaction is entered into." *County of Orange*, 31 F.Supp.2d at 776, citing *Arthur v. City of Petaluma*, 175 Cal. 216, 223-24 (1917); and *Buck v. City of Eureka*, 124 Cal. 61, 68 (1899).

Actions that are wholly beyond the powers of a governmental entity are ultra vires and void. *In re County of Orange*, 31 F.Supp.2d at 768; *G.L. Mezzetta, Inc. v. City of American Canyon*, 78 Cal.App.4th 1087, 1092-93 (2000); *Offner*, 19 Cal.2d at 486.

1   **V.    DISCUSSION**

2         **A.    The Optum Bank Loan**

3         Two principles guide this court's inquiry into the validity of

4   the Optum Bank loan.  First, Southern Inyo's Board of Directors is

5   presumed to have performed its duty in authorizing the Optum Bank

6   loan.  *Carruth v. City of Madera*, 233 Cal.App.2d 688, 693 (1965); Cal.

7   Evid. Code 664 ("It is presumed that official duty has been regularly

8   performed"), *incorporated by* Fed. R. Evid. 302.  That presumption is

9   rebuttable.  *Id.*

10        Second, a public entity speaks "by and through its records."  5

11  McQuillin, *Municipal Corporations*, at § 14.6.  "It is well established

12  that a court determines the validity of legislative enactments based

13  on the facial content or effect of the enactment, not by examining the

14  subjective motives or purposes of the legislators." *Schroeder v.*

15  *Irvine City Council,* 97 Cal.App.4th 174, 192-93 (2002).  "Courts will

16  not permit testimony from current or former public officials

17  concerning their intentions or understanding of legislative actions."

18  *City of King v. Community Bank of Central California*, 131 Cal.App.4th

19  913, 942 (2005).  But the omission of a statutorily required factual

20  predicate for the validity of a resolution does not "per se

21  invalidate" an otherwise valid municipal act.  5 McQuillin, *Municipal*

22  *Corporations* at § 14.9. Parol evidence may be admitted "to establish

23  the real facts of transactions or corporate acts, in the entire

24  absence of all record, or where the record kept is so meager that the

25  particular transaction, act or vote is not disclosed by it."  *Id.*

26  "[P]arol evidence is admissible to prove facts omitted from the record

27  unless the law expressly and imperatively requires all matters to

28  appear of record, and make the record the only evidence."  *H.C. Gordon*

*v. City of San Diego*, 108 Cal. 264, 269 (1895).

            **1.    Promissory Note**

    A promissory note is negotiable if it meets the elements of a negotiable instrument. Cal. Comm. Code § 3104.  That section provides:

> [N]egotiable instrument" means an **unconditional promise** or order to pay a **fixed amount of money**, with or without interest or other charges described in the promise or order, if it is all of the following:
>
> (1) Is **payable to bearer or to order** at the time it is issued or first comes into possession of a holder.
>
> (2) Is **payable** on demand or **at a definite time.**
>
> (3) **Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money,** but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Cal. Comm. Code 3104(a) (emphasis added); 4 Hawkland, Lawrence & Miller, *Uniform Commercial Code Series*, Article 3 Commercial Paper § 3-110 et seq. (December 2019); *Marques v. Joseph (In re Marques)*, 2016 WL 7188653 *7-8 (December 9, 2016) (applying Cal. Comm. Code § 3104 to variable rate note); *Resolution Trust Corp. v. Kennelly*, 57 F.3d 819 n. 1 (9th Cir. 1995) ("It is far from clear [under the Uniform Commercial Code] that a note is rendered nonnegotiable simply because it contains a variable interest rate").

    "Whether an instrument is negotiable is a question of law to be determined solely from the face of the instrument, without reference to the intent of the parties." *Cooperative Centrale Raiffeisen-Boerenleenbank B.A. v. Bailey*, 710 F. Supp. 737, 738 (C.D. Cal. 1989).

    Here, Optum Bank's promissory note satisfies the elements of § 3104.  It is an unconditional promise to pay $1,676,000 to Optum Bank

1  in monthly installments over a 10-year period.  As a result, the

2  negotiable promissory note element of § 32130.2(a) has been satisfied.

3              **2.    Resolution by the Board of Directors**

4        "Resolution" is not defined in § 32130.2(a).  As a rule, it is

5  "[a] formal expression of the opinion or will of an official body or a

6  public assembly, adopted by vote. . . ."  *Black's Law Dictionary* 1310-

7  1311 (16th ed. 2019).  In the context of public entities, it is

8  characterized by less formality than other actions by the entity's

9  Board of Directors, i.e., ordinances, *San Diego City Firefighters,*

10 *Local 145 v. Bd. of Admin. of San Diego City Employees. Ret. Sys.*, 206

11 Cal.App.4th 594, 607-08 (2012) (it is "a mere declaration with respect

12 to future purpose or proceedings"); 5 McQuillin, *Municipal*

13 *Corporations* at § 15.6 (a resolution is "a unilateral action that is

14 temporary in nature and, thus, it does not create any vested

15 contractual rights").  A "resolution," as that term is used by

16 § 32130.2(a), requires the formal assent of Southern Inyo's Board of

17 Directors at a duly called meeting.

18       Hospital districts may borrow money.  Cal. Health & Safety Code

19 §§32130-32130.6.  As a rule, the authority of the Board of Directors

20 may not be delegated to third parties.  2A McQuillin, *Municipal*

21 *Corporations*, at § 10:44.  Moreover, "[w]here a municipality is

22 authorized to delegate a state-granted authority, it is confined in

23 its delegation to the powers authorized in its own enabling

24 ordinance."  *Id.*  The Local Healthcare District Law does not authorize

25 the Board of Directors to delegate its borrowing authority.  *Cf.* Cal.

26 Health & Safety Code §§ 32121.1 (discharge of certain subordinate

27 officers and employees).[3]  As a result, Southern Inyo was authorized

---

28 [3] The court is aware that specified provisions of Southern Inyo Healthcare

1    to act only with approval by of quorum of the Board of Directors.

2          Here, there is no dispute that Southern Inyo's Board of

3    Directors authorized the District to take **a** loan from Optum Bank;

4    there is a dispute over whether the Board authorized the district to

5    take **this** loan from the bank.

6          Optum Bank points to the Governmental Certificate, executed by

7    Richard T. Gering, President, and Mary Kemp, Secretary, which it

8    contends was authorized by a quorum of the Board of Directors at the

9    October 2014, special meeting.  The certificate contains pre-printed

10   verbiage that states:

11         Certificates Adopted.  At a meeting of the appropriate
           governing body of the Entity, duly called and held on
12         February 20, 2015, at which a quorum was present and
           voting, or by other duly authorized action in lieu of a
13         meeting, the resolutions set forth in this Certificate were
           adopted.
14

15         Southern Inyo concedes that Board President Gering and Secretary

16   Kemp signed the Governmental Certificate.  But neither side has

     offered evidence, beyond the boilerplate language of the certificate,
17
     that the Board of Directors actually convened as recited.  Moreover,
18
     during oral argument, Optum Bank implicitly conceded that no such
19
     meeting occurred.  Since the Board's authority to borrow cannot be
20
     delegated and since there is no record that the Board actually
21
     convened on February 20, 2015, without more, the Governmental
22
     Certificate is not a "resolution" within the meaning of § 32103.2(a).
23
           The Confidential Letter of Interest, as approved by the Board,
24
     authorized a "mortgage loan" of "approximately $1,500,000" secured by
25
     a first deed of trust against the District's real property.  It
26
     _____
27   Districts Bylaws, e.g. Art. IV § 4, can be read to authorize broadly
     delegation of authority.  To the extent that Optum Bank so argues, the court
     finds that the Bylaws exceed the scope of delegation authorized by The Local
28   Healthcare District Law.  Cal. Health & Safety Code § 32000 et seq.

provided for payments of $20,200 per month between January and June of

each calendar year and for no payments between July and December of

each year. It also provided for interest for the first five years of

repayment at the rate of 5.25%, followed by interest for the second

five years adjusted to the Federal Home Loan Bank of Seattle's 5-year

loan rate plus 3.59%.

In contrast, the loan that Optum Bank actually made to the

District was for $1,676,000, secured by the District's real property

and personal property. The note contained a year-round monthly

repayment schedule.[4] It also provided for interest during the second

five-year repayment period at the Federal Home Loan Bank of Seattle's

5-year loan rate plus 3.680%.

As a result, a genuine issue of fact exits: whether Southern

Inyo's Board of Directors authorized the Optum Bank loan that was

actually written.[5]

### 3. 10-Year Maturity Date

A promissory note issued under § 32130.2 must mature not later

than 10 years from the date issued. Cal. Health & Safety Code

§ 32103.2(a). Absent specific language in a statute, deadlines are

calculated by excluding the first day and including the last day on

which an act must occur. *Clements v. Pasadena Fin. Co.*, 376 F.2d

1005, 1007 (9th Cir. 1967) ("In order to apply a different method of

computing time, the particular statute involved must specifically

---

[4] Admittedly, the average monthly payment over a 12-month period is the same, or nearly so, under the Confidential Letter of Interest and under the loan actually written. The loan proposed call for monthly payments of $20,200 between January and June of each year. The loan actually written required year-round monthly payments of $10,169.

[5] Admittedly, in limited circumstances, parol evidence may be admissible to amplify the true intention of Southern Inyo's Board of Directors. *City of King*, 131 Cal.App.4th at 942.

1  require the application of a different rule"); *People v. Sup. Ct.*

2  *(Finch)*, 200 Cal.App.3d 1546, 1551 (1988).

3      California has codified this rule: "The time in which any act

4  provided by law is to be done is computed by excluding the first day,

5  and including the last, unless the last day is a holiday, and then it

6  is also excluded." Cal. Gov't Code § 6800; see also, Cal. Civ. Code §

7  10; Cal. Code of Civ. Proc. 12. That rule has been broadly applied.

8  *Rauer v. Broder*, 107 Cal. 282, 283-84 (1895) (due date of promissory

9  note); *Reichardt v. Reichardt*, 186 Cal.App.2d 808, 809-12 (1960)

10 (duration of domestic support payments under divorce decree); *Rapp v.*

11 *Los Angeles City Sch. Dist.*, 5 Cal.App.2d 342, 343 (1935) (statutory

12 notices).

13      Here, the promissory note was executed on February 20, 2015, and

14 will mature on February 20, 2025. Applying the rule of excluding the

15 first day and including the last day, the Optum Bank note matures

16 precisely 10 years after issuance and complies with Cal. Health &

17 Safety Code § 32130.2(a). Optum Bank has satisfied its burden of

18 proof as to the 10-year maturity element of § 32130.2.

19              **4.   Debt-to-Income Ratio**

20      California law limits the total promissory note indebtedness a

21 district may incur at any one time to 85% of the district's estimated

22 revenue for the current fiscal year. Cal. Health & Safety Code

23 § 32130.2(a). Carefully parsed, the rule has two parts: (1) measured

24 contemporaneously, *County of Orange*, 31 F.Supp.2d at 776; and (2) the

25 aggregate amount of all promissory notes issued under § 32130.2 may

26 not exceed 85% of estimated income and revenue for the current fiscal

27 year in which the promissory notes are to be issued. Cal. Health &

28 Safety Code § 32130.2(a).

Optum Bank asserts, and Southern Inyo admits, that as of June 30, 2015, approximately four months after the loan was made, Southern Inyo's debt-to-income ratio was 27%.[6]  Though not calculated contemporaneously with Optum Bank's loan, there is no genuine issue over the fact that the Optum Bank loan did not cause the district to have a debt-to-income ratio in excess of 85% when the loan was issued. Optum Bank has sustained its burden of proof on the issue.

### 5.   Interest Rate

Section 32130.2(c) limits the maximum annual interest rate paid on a promissory note; the interest rate "shall at no time exceed the amount authorized under Section 53531 of the Government Code." Section 53531 limits the interest rate to 12% per annum. *Burks v. Monterey Regional Water Pollution Control Agency*, 156 Cal.App.3d 1013, 1016 (1984) (describing the rate in § 53531 as a "ceiling").

Southern Inyo's promissory note bears interest within the limits imposed by § 53531.  The initial rate was fixed at 5.250% for the first five years and then converts to a variable interest rate (Federal Home Loan Bank of Seattle's 5-year loan rate plus 3.680%). At all pertinent times Optum Bank charged interest at less than the 12% per annum cap.  Moreover, the Ninth Circuit applies savings clauses to preclude a finding of illegality of a contract.  *In re Dominguez*, 995 F.2d 883 (9th Cir. 1993) (facially usurious loan, i.e., 17% per annum, protected by "savings clause"); Restatement (Second) of

---

[6] That percentage was calculated thusly.  Southern Inyo's promissory notes to all creditors aggregated $1,847,242.  Exhibits to Decl. Williams, Exh. 45, p. 11, lines 17-21, March 20, 2019, Exh. 179.  As of June 30, 2015, Southern Inyo's income and revenue was $6,909,724 (Operating Revenues $6,105,816 + District Tax Revenues $779,075 + Investment Income $949 + Grants and contributions $23,894).  Exhibits to Second Amended Plan for Adjustment of Debt, Exh. 4, p. 54, January 17, 2018, ECF # 398.  Doing the math: $1,847,242 ÷ $6,909,724 x 100 = 27%.

Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").  Consequently, the interest rate charged is consistent with §§ 32130.2(c), 53531.

### 6.   Useful Life Limitation

Southern Inyo argues that authorizing the Optum Bank loan was ultra vires as it was in violation of the useful life limitation under § 32130.2(b).  First, Southern Inyo argues that while the UHC Loan fell squarely within the useful life limitation of § 32130.2(b), the authorizing resolution, i.e., Resolution 11-06, did not contain useful life findings as to either the equipment or the software.  As a result, the UHC loan, and any loan to refinance it, i.e., the Optum Bank loan, was tainted by illegality.  Second, Southern Inyo argues that at the time it authorized Optum Bank to refinance the UHC equipment and software loan the Board of Directors made no findings as to the remaining useful life of the equipment or software.

The court agrees with Southern Inyo's first argument that the UHC loan was tainted--and that the taint extends to the Optum Bank loan, provided the Southern Inyo Board of Directors made no useful life findings when it authorized the UHC loan.

California courts have long understood that illegal contracts may not be enforced.  *Stockton Morris Plan Co. v. Calif. Tractor & Equipment Corp.*, 112 Cal.App.2d 684, 690-691 (1952).  That is true even if it is an innocent assignee that seeks enforcement.  *Fewel & Dawes, Inc. v. Pratt*, 17 Cal.2d 85, 92 (1941).  Since overruling Southern Inyo's objection to Optum Bank's Proof of Claim enforces the loan, this court must sustain Southern Inyo's objection if it finds

that the Optum Bank loan was not statutorily authorized.  In the case
of a public entity, the argument is made stronger still by the fact
that persons who contract with governmental entities are deemed to
know the limitations on their power to contract, *Miller v. McKinnon*,
20 Cal.2d 83, 89 (1942); *G.L. Mezzetta*, 78 Cal.App.4th at 1094, n. 4,
and that the public entity's acts are outside of its authority "will
be imputed to the other contracting party."  1 Gelfand, *State and
Local Government Debt Financing*, at § 11:18.

The court also agrees with Southern Inyo's second argument that
refinancing debt to acquire assets with finite lifespans is itself
limited by the useful life span limitation of § 32130.2(b).  Section
32130.2(a) authorizes issuance of promissory notes "for any district
purposes subject to the restrictions and requirements imposed by this
section."  Cal. Health & Safety Code § 32130.2(b) is such a
limitation.  It limits the length of a promissory note given to
acquire assets that have finite lifespans.

> Negotiable promissory notes may be issued pursuant to this
> section **for any capital outlay facility, equipment, or item**
> which has a **useful life** equal to, or longer than, the term
> of the notes, **as determined by the board of directors.**

Cal. Health & Safety Code § 32130.2(a) (emphasis added).

No known case addresses whether debt in excess of the debt
ceiling may be cleansed by refinancing that debt.  But the language of
the statute and analogous case law suggest not.  Section 32130.2(b)
applies the useful life restriction to promissory notes issued "for"
equipment and items.  The preposition "for" means "with respect to."
*Webster's New Explorer Encyclopedic Dictionary* 715 (2006 ed.).
Without qualifying language, the use of the preposition "for" suggests
a broad reading of § 32130.2(b) and includes the refinance of a debt

1    otherwise covered by that subsection.

2        Moreover, precedent and commentators preclude entities from

3    accomplishing indirectly what they could not do directly.  Public

4    entities may not evade debt limitations by recharacterizing debt.

5    *Fontana Redevelopment Agency v. Torres*, 153 Cal.App.4th 902, 912–913

6    (2007), as modified on denial of reh'g (August 24, 2007) and rev.

7    denied (October 24, 2007).  As one commentator put it:

8        In some instances, municipalities have sought to avoid debt
         ceilings by attempting to recharacterize the nature of the
9        debt into a category which would not technically fall
         within the debt ceiling limitations. Courts are not,
10       however, agreeable to such recharacterization, and look
         instead to the underlying operation of the transaction . .
11       .

12   Gelfand, *State and Local Government Debt Financing*, Debt Ceilings and

13   Other Restrictions on Debt Financing, Devices Employed to Evade Debt

14   Ceilings at § 11:26 (2d ed.), citing *Fontana Redevelopment Agency*, 153

15   Cal.App.4th at 912–913.

16       The UHC loan falls within § 32130.2 and, as a result, is subject

17   to the useful life limitation.  Refinancing a debt covered by the

18   narrower useful life limitation of subdivision (b) of § 32130.2 into

19   the longer 10-year maturity rule of subdivision (a) of § 32130.2 is a

20   prohibited recharacterization.

21       Neither side has sustained its burden of proof on the issue.  To

22   prevail at summary judgment, Optum Bank must show that Southern Inyo's

23   Board of Directors made useful life findings as to equipment and

24   software for both the UHC loan and the Optum Bank loan.  It has not

25   done so.

26       In contrast, to prevail at summary judgment, Southern Inyo must

27   show that its Board of Directors did not make useful life findings as

28

to the equipment and software. It has not done so.[7] Neither

Resolution 11-06, which approved the UHC loan, nor the resolutions,

i.e., civil minutes of the October 14, 2014 meeting or the

Governmental Certificate, which purportedly approved the Optum Bank

loan made useful life findings. Southern Inyo also has not

demonstrated the absence of admissible parol evidence from which such

a finding might be made. As a result, neither side has demonstrated

entitlement to judgment.

**B.    The Encumbrance in Favor of Optum Bank**

Southern Inyo contends that neither the California Constitution

nor applicable statutory law authorizes a public entity to give a

private lender a security interest in property owned by the entity.

The California Constitution does not preclude a public entity

from pledging assets to a private lender to secure a loan in its

favor. *Merchants Nat. Bank of San Diego v. Escondido Irr. Dist.*, 144

Cal. 329 (1904) (holding that an irrigation district's pledge of

assets held in trust violated due process of law under the Cal.

Const., Art. 1, § 13), overruled by *La Mesa, Lemon Grove & Spring Val.

Irr. Dist. v. Halley*, 197 Cal. 50, 58-62 (1935).

In the absence of contrary constitutional prohibition, a public

entity's authority to encumber its assets is defined by the entity's

---

[7] Southern Inyo mistakenly assumes that Resolution 11-06, the civil minutes of the October 2014, and/or the Governmental Certificate provide sufficient, stand-alone evidence by which useful life findings might be made. This is not the case. As a rule, parol evidence of the predicate legislative findings is admissible absent express charter or statutory exclusion of that evidence. 5 McQuillin, *Municipal Corp.*, Municipal Records § 14:9 (3d ed.) ("Where the charter or statute applicable declares in express terms that a record shall be kept and shall be the only evidence of corporate acts, the rule of strict construction would exclude parol evidence . . . "); see also, *City of King v. Community Bank of Central California*, 131 Cal.App.4th 913, 942-947 (2005). Here, § 32130.2 contains no such limitation. As a result, limited parol evidence would be admissible to show that findings were made.

charter and by applicable statutory law. *Branham v. City of San Jose*, 24 Cal. 585 (1864); *Wallace v. Mayor and Common Council of San Jose*, 29 Cal. 180, 186 (1865) (public entities have those powers specifically granted or necessary to carry out expressly granted powers); 10 McQuillin, *Municipal Corporations* at § 28:46.  No such constitutional prohibition exits here.[8]  Subject to statutory limitations, The Local Healthcare District Law authorizes hospital districts to encumber assets:

> **Each local district shall have and may exercise the following powers:**
>
> . . .
>
> (c) To purchase, receive, have, take, hold, lease, use, and enjoy property of every kind and description within and without the limits of the district, and **to control, dispose of, convey, and encumber the same** and create a leasehold interest in the same for the benefit of the district.

Cal. Health & Safety Code § 32121(c)(emphasis added).

Southern Inyo contends that the District's right to encumber under § 32121(c) is limited by § 32127.2 and § 32127.3, which authorizes encumbering district assets to secure state insurance financing and specified federal loans to construct, expand or remodel healthcare facilities.  In the pertinent part, § 32127.2 provides:

> **Exclusively for the purpose of securing state insurance of financing for the construction** of new health facilities, the expansion, modernization, renovation, remodeling and alteration of existing health facilities, and the initial

---

[8] Southern Inyo's citation to the California Constitution, Art. 11, § 11(a) does not support its position.  That section provides: "The Legislature may not delegate to a private person or body power to make, control, appropriate, supervise, or interfere with county or municipal corporation improvements, money, or property, or to levy taxes or assessments, or perform municipal functions."  Courts considering this provision have construed it to mean that the legislature "may not delegate to a private person or body the power to levy taxes."  *Howard Jarvis Taxpayers' Ass'n v. Fresno Metropolitan Projects Authority*, 40 Cal.App.4th 1359, 1396 (1995).

equipping of any such health facilities . . . **and notwithstanding any provision of this division or any other provision or holding of law, the board of directors of any district may** (a) borrow money or credit, or issue bonds, as well as by the financing methods specified in this division, and (**b) execute in favor of the state first mortgages, first deeds of trust, and other necessary security interests** as the Office of Statewide Health Planning and Development may reasonably require in respect to a health facility project property as security for the insurance. . .

Cal. Health & Safety Code § 32127.2 (emphasis added).

Similarly, § 32127.3 provides:

(a) **Exclusively for the purpose of securing federal mortgage insurance, federal loans, federal loans or grants or guaranteed loans** issued pursuant to the federal Consolidated Farm and Rural Development Act . . . **for financing or refinancing the construction of new health facilities, the expansion, modernization, renovation, remodeling, or alteration of existing health facilities,** and the initial equipping of those health facilities under the federal mortgage insurance programs as are now or may hereafter become available to a local hospital district, **and notwithstanding any provision of this division, or any other provision or holding of law, the board of directors of any district may** do either or both of the following:

(1) Borrow money or issue bonds, in addition to other financing methods authorized under this division.

(2) **Execute, in favor of the United States, appropriate federal agency, or federally designated mortgagor, first mortgages, first deeds of trust, or other necessary security interests** as the federal government may reasonably require with respect to a health facility project property as security for that insurance.

Cal. Health & Safety Code § 32127.3(a)(emphasis added).

In construing its statutes, California courts place a premium on ascertaining legislative intent and, wherever possible, attempt to interpret statutes consistent with that intent. Cal. Code of Civ. Proc. 1859. California courts hold that statutory language should be construed by their plain and ordinary meaning. *Stephens v. County of Tulare*, 38 Cal. 4th 793 (2006); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 59, (2002) (court should "follow the

Legislature's intent, as exhibited by the plain meaning of the actual words of the law"). "If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs." *People v. Johnson*, 28 Cal.4th 240, 244 (2002).

Here, the legislature has used plain words to express its intention.  Sections 32127.2 and § 32127.3 each provide that "notwithstanding any provision of this division or any other provision or holding of law" the board of directors may encumber district assets.  The use of the word "notwithstanding" signals a legislative intent to offer hospital districts still another statutory avenue by which it may borrow funds and encumber district assets.  Sections 32127.2 and 32127.3 do not restrict the Board of Directors' authority to encumber under § 32121(c).  Those sections also do not preclude the board borrowing from private lenders.  As a result, if Southern Inyo was authorized to borrow money from Optum Bank, it was authorized to encumber district assets to secure that loan.

**C.    Optum Bank's Claim for Restitution**

Courts and commentators are uniform that ultra vires acts by a public entity are void.  *Miller v McKinnon*, 20 Cal.2d at 87; *Reams v. Cooley*, 171 Cal. 150, 153 (1915).  That rule has been applied to unauthorized agreements entered into by public entities.  *Miller v. McKinnon*, 20 Cal.2d at 83.  In such instances the party who has entered the ultra vires contract with the public entity is without remedy.  *Id.* at 88-89.  As one court observed:

It is settled that "a private party cannot sue a public

28

entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations."

As our Supreme Court stated long ago: "[N]o implied liability to pay upon a *quantum meruit* could exist where the prohibition of the statute against contracting in any other manner than as prescribed is disregarded." The reason is simple: "The law never implies an agreement against its own restrictions and prohibitions, or [expressed differently], 'the law never implies an obligation to do that which it forbids the party to agree to do.' " In other words, contracts that disregard applicable code provisions are beyond the power of the city to make.

*Katsura v. City of San Buenaventura*, 155 Cal.App.4th 104, 109–110 (2007) (internal citations omitted); see also, *Stockton Morris Plan Co.*, 112 Cal.App.2d at 684 (1952); *Lundeen Coatings Corp. v. Dep't of Water & Power*, 232 Cal.App.3d 816, n. 9 (1991).[9]  Denial of recovery has been applied to debt that violates statutory debt limits.  15 McQuillin, *Municipal Corp.*, at § 41:45 ("The creditor, if his or her debt exceeds the limit, is without remedy").

At least three potential exceptions to the rule exist.  First, recovery may be allowed for contracts within the authority of a public entity to enter, but which are rendered invalid by blunders in execution.

---

[9] Optum Bank's authorities do not stand for the proposition that a party injured by a public entity's ultra vires acts are entitled to restitution. *Astiana v. Hain Celestial Group*, 783 F.3d 753 (9th Cir. 2015); *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016); *Rutherford Holdings, LLC v. Plaza Del Ray*, 223 Cal.App.4th 221 (2014).  *Honeywell, Inc. v. San Francisco Housing Authority,* 72 Fed. Appx. 609 (2003), is an unpublished decision, issued prior to 2007, and may not be cited.  Fed. R. App. P. 32.1, 36-3.  The closest case is *Russell City Energy Co., LLC v. City of Hayword*, 14 Cal.App.5th 54 (2017).  That case is distinguishable; there the city had the power to contract, but the agreement was ultimately held to violate Section 31 of the California Constitution.  And it was decided on "the unique circumstances" of the case. p. 73.  It does not stand for the proposition that restitution is available to the injured party whenever a public entity lacks the power to contract.

> Undoubtedly, . . . a municipal corporation, may, under some circumstances, be held liable upon an implied contract for benefits received by it, but this **rule of implied liability is applied only** in those cases where the board or municipality is given the **general power to contract with reference to a subject matter** and the express contract which it has assumed to enter into in pursuance of this general power is rendered **invalid for some mere irregularity or some invalidity in the execution thereof.**

*Reams v. Cooley,* 171 Cal. at 153 (emphasis added).

Second, equitable recovery may be allowed where the injured creditor can trace "the identical property delivered to the municipality." 15 McQuillin, *Municipal Corp.*, at § 41:45.

Third, recovery may be allowed in "exceptional circumstances." *Id.* "Where contract for conditional sale of water-pumping equipment to city created a debt in violation of the constitution, the seller was entitled to recover on an implied contract for the reasonable value of the use of the equipment during the years not barred by the statute of limitations." *Id.* at n. 5, citing *City of Eastman v. Georgia Power Co.*, 69 Ga. App. 182, 25 S.E.2d 47 (1943); *Russell City Energy Co., LLC v. City of Hayward*, 14 Cal.App.5th 54 (2017) (successful constitutional challenge).

If Southern Inyo's Board of Directors acted without statutory authority when it took the Optum Bank loan, the bank is presumptively without remedy and the objection to the bank's Proof of Claim must be sustained. Though California law does provide for limited exceptions to that rule, Optum Bank has not carried its burden of proof as to the applicability of an equitable remedy. The exception most likely applicable, if any, is the irregularity in execution. Until the court establishes whether (1) Southern Inyo enacted a resolution within the meaning of § 32130.2(a); and (2) useful life findings, as required by § 32130.2(b), were made as to the equipment and/or software, the court

1  cannot determine whether any of the three noted exceptions allowing

2  for equitable remedies should apply here.

3  **VI.  CONCLUSION**

4          For each of the foregoing reasons, Southern Inyo's motion for

5  summary judgment is denied.

6          Optum Bank's motion for summary judgment is granted in part.

7  Optum Bank has satisfied the following elements of California Health &

8  Safety Code § 32130.2: (1) Southern Inyo executed a negotiable

9  promissory note in favor of Optum Bank; (2) that promissory note

10 matured not more than 10 years from issuance; (3) on the date Southern

11 Inyo executed the note its aggregate notes to creditors did not exceed

12 85% of all of Southern Inyo's estimated revenue and income; and (4)

13 the interest rate for the negotiable promissory note executed in favor

14 of Optum Bank was less than the statutory maximum.  Except as to the

15 four elements described herein, Optum Bank's motion for summary

16 judgment is denied.

17         The court will issue an order from chambers.

18 **Dated:**  Feb 10, 2020

19

20 _____

21         **Fredrick E. Clement**
           **United States Bankruptcy Judge**

22

23

24

25

26

27

28

# Instructions to Clerk of Court

**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| | |
|---|---|
| Ashley M. McDow<br>555 South Flower Street, Suite 3300<br>Los Angeles CA 90071 | Eric S. Goldstein<br>1 Constitution Plaza<br>Hartford CT 06103-1919 |
| Gerald N. Sims<br>1620 Fifth Avenue, Suite 400<br>San Diego CA 92101 | Riley C. Walter<br>205 E. River Park Circle, Ste. 410<br>Fresno CA 93720 |
| Jeffrey I. Golden<br>650 Town Center Drive, Ste 600<br>Costa Mesa CA 92626 | Latonia C. Williams<br>One Constitution Plaza<br>Hartford CT 06103-1919 |
| Paul J. Pascuzzi<br>500 Capitol Mall, Suite 2250<br>Sacramento CA 95814 | Office of the U.S. Trustee<br>2500 Tulare St, Ste 1401<br>Fresno, CA 93721 |